**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LEONID DUBINSKIY, NADEZHDA DUBINSKIY, ) ) | CIV-F-10-0735 AWI GSA |
| ) | |
| Plaintiffs, ) | ORDER RE: MOTIONS TO DISMISS |
| ) | |
| v. ) | |
| ) | |
| AURORA LOAN SERVICES; COUNTRYWIDE HOME LOANS, INC.; SANTA CRUZ MORTGAGE COMPANY; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; CAL-WESTERN RECONVEYANCE CORP.; and DOES 1-250, ) ) ) ) ) ) ) ) | |
| ) | |
| Defendants. ) | (Docs. 7 and 13) |

**I. History**[1]

Plaintiffs Leonid and Nedezhda Dubinskiy reside at 7843 N. Backer Ave., Fresno, CA 93720. They purchased their home with a mortgage obtained on March 3, 2005. Plaintiffs appear to allege that Defendant Aurora Loan Services LLC ("Aurora") was the lender. However, other allegations imply that Defendant Santa Cruz Mortgage Company, Inc. ("Santa Cruz") may have been the lender. The Deed of Trust recorded March 11, 2005, identifies Defendant

---

[1]The factual history is provided for background only and does not form the basis of the court's decision; the assertions contained therein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary.  Plaintiffs fell behind on their mortgage payments.  Defendant Cal-Western Reconveyance Corporation ("Cal-Western") filed a Notice of Default, recorded April 27, 2009.  Defendant Cal-Western filed a Notice of Trustee Sale, recorded August 6, 2009 that set August 25, 2009 as the date of public auction of the property.  Plaintiffs have also named as a Defendant, Countrywide Home Loans, Inc. ("Countrywide"), but do not explain how that entity is at all connected to these series of events.

Proceeding without legal representation, Plaintiffs filed suit in Superior Court, County of Fresno, on September 22, 2009. A first amended complaint was filed in state court on March 23, 2010. Doc. 1, Part 1.  The complaint is comprised of eight causes of action: 1) the federal Truth in Lending Act ("TILA"); 2) California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"); 3) negligence; 4) the federal Real Estate Settlement Procedures Act ("RESPA"); 5) breach of fiduciary duty; 6) fraud; 7) California's Unfair Competition Law ("UCL"); and 8) breach of the implied covenant of good faith and fair dealing.  The complaint includes a number of inchoate allegations regarding a scheme to infuse capital into the home mortgage lending system which resulted in the invalid transfer of beneficial interest to third parties through MERS (who allegedly does not have the authority to operate in California), questioning whether Plaintiffs were provided legal tender as part of the mortgage, and questioning whether the original promissory note or a substitute note was recorded.  Defendant Countrywide removed the case to the Eastern District of California, based on federal question jurisdiction.

Defendants Countrywide, Aurora, and MERS filed motions to dismiss pursuant to Fed. Rule Civ. Proc. 12(b)(6).  Plaintiffs have filed no response.  The matter was taken under submission without oral argument.

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6)**,** a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted."  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient

1   facts alleged under a cognizable legal theory. Navarro v. Block, 250 F.3d 729, 732 (9th Cir.

2   2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

3   factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

4   requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

5   of action will not do. Factual allegations must be enough to raise a right to relief above the

6   speculative level, on the assumption that all the allegations in the complaint are true (even if

7   doubtful in fact)....a well-pleaded complaint may proceed even if it strikes a savvy judge that

8   actual proof of those facts is improbable" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56

9   (2007), citations omitted. "[O]nly a complaint that states a plausible claim for relief survives a

10  motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the

11  Court of Appeals observed, be a context-specific task that requires the reviewing court to draw

12  on its judicial experience and common sense. But where the well-pleaded facts do not permit the

13  court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it

14  has not shown that the pleader is entitled to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950

15  (2009), citations omitted. The court is not required "to accept as true allegations that are merely

16  conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden

17  State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). The court must also assume that "general

18  allegations embrace those specific facts that are necessary to support the claim." Lujan v. Nat'l

19  Wildlife Fed'n, 497 U.S. 871, 889 (1990), citing Conley v. Gibson, 355 U.S. 41, 47 (1957),

20  overruled on other grounds at 127 S. Ct. 1955, 1969. Thus, the determinative question is

21  whether there is any set of "facts that could be proved consistent with the allegations of the

22  complaint" that would entitle plaintiff to some relief. Swierkiewicz v. Sorema N.A., 534 U.S.

23  506, 514 (2002). At the other bound, courts will not assume that plaintiffs "can prove facts

24  which [they have] not alleged, or that the defendants have violated...laws in ways that have not

25  been alleged." Associated General Contractors of California, Inc. v. California State Council of

26  Carpenters, 459 U.S. 519, 526 (1983).

27      In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited

28  to reviewing only the complaint. "There are, however, two exceptions....First, a court may

3

consider material which is properly submitted as part of the complaint on a motion to dismiss...If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them. Second, under Fed. R. Evid. 201, a court may take judicial notice of matters of public record." Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001), citations omitted.  The Ninth Circuit later gave a separate definition of "the 'incorporation by reference' doctrine, which permits us to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005), citations omitted.  "[A] court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss. Facts raised for the first time in opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice." Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003), citations omitted.

If a Rule 12(b)(6) motion to dismiss is granted, claims may be dismissed with or without prejudice, and with or without leave to amend.  "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc), quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).  In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).


### III. Discussion

Plaintiffs have not filed an opposition.  Further, from the docket, it is unclear if other defendants have been served.  Plaintiffs' complaint contains several unclear and confusing allegations.  As stated, they fail to state a valid cause of action, but leave to amend is granted to allow Plaintiffs a chance to better explain how Defendants' actions may have given rise to legal claims.

**A. Countrywide**

Plaintiffs do not explain what role Defendant Countrywide played in the mortgage, its servicing, or foreclosure.  There is no explanation for how Defendant Countrywide is connected to this transaction.  "The FAC does not contain any allegations that CHL had any interest in the Loan or the Property."  Doc. 8, Defendant Countrywide's Brief, at 2:4-5.  Plaintiffs have provided no relevant allegations as to Defendant Countrywide.

**B. Truth in Lending Act**

Plaintiffs seek damages and rescission based on the allegation "Defendants violated TILA in numerous ways, including, but not limited to: (i) failing to provide required disclosures prior to consummation of the transaction; (ii) failing to make required disclosures clearly and conspicuously in writing; (iii) failing to timely deliver to plaintiff certain notices required by statute; (iv) placing terms prohibited by statute into the transaction; and (v) failing to disclose all finance charges and amounts finance."  Doc. 1, Part 1, Complaint, at 11:14-19.  "The purpose of the TILA is to ensure that users of consumer credit are informed as to the terms on which credit is offered them."  Jones v. E*Trade Mortg. Corp., 397 F.3d 810, 812 (9th Cir. 2005).  TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights."  Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998).

For monetary damages, TILA has a one year statute of limitation: "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."  15 U.S.C. §1640(e).  The limitations period runs from the date of consummation of the transaction, with "consummation" defined as "the time that a consumer becomes contractually obligated on a credit transaction."  12 C.F.R. §226.2(a)(13); Grimes v. New Century Mortg. Corp., 340 F.3d 1007, 1009 (9th Cir. 2003).  The mortgage was signed on March 3, 2005, which means the statute of limitations expired on March 4, 2006.  Plaintiffs did not file suit until September 22, 2009.  Plaintiffs have not argued that equitable tolling should apply.

TILA provides for rescission in limited circumstances:

> Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

15 U.S.C. §1635(a).  "This section does not apply to - (1) a residential mortgage transaction as defined in section 103(w)." 15 U.S.C. §1635(e). "The term 'residential mortgage transaction' means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. §1602(x) (provision "w" redesignated "x" by 111 P.L. 203 §1100A). Mortgages for the initial purchase of a house are not subject to rescission under TILA. Crittenden v. HomEq Servicing, 2009 U.S. Dist. LEXIS 95009, *10 (E.D. Cal. Sept. 28, 2009); Watts v. Decision One Mortg. Co., LLC, 2009 U.S. Dist. LEXIS 54784, *8 (S.D. Cal. June 11, 2009); De Jesus-Serrano v. Sana Inv. Mortg. Bankers, Inc., 552 F. Supp. 2d 191, 194 (D.P.R. 2007).  Plaintiffs state that they "financed the foregoing Real Property on or about March 3, 2005 and financed their purchase through SANTA CRUZ by virtue of a Trust Deed and Note securing the Loan." Doc. 1, Part 1, Complaint, at 6:19-20.  As this is a mortgage for purchase, rescission is not available under TILA.


**C. Rosenthal Fair Debt Collection Practices Act**

Plaintiffs alleges Defendants violated the RFDCPA generally without citing any specific provision: "Defendants' actions constitute a violation of the California Rosenthal Fair Debt Collection Act in that they threatened to take actions not permitted by law, including but not limited to: foreclosing upon a void security interest; foreclosing upon a note of which they were not in possession nor otherwise entitled to payment; falsely stating the amount of a debt;

increasing the amount of debt by including amounts that are not permitted by law or contract; and using unfair and unconscionable means in an attempt to collect a debt." Doc. 1, Part 1, Complaint, at 13:4-9.  In general, the RFDCPA prohibits debt collectors from engaging in harassment, making threats, using profane language, falsely simulating the judicial process, and cloaking its true nature in collecting debt. See Cal. Civ. Code §§1788.10-1788.18.

"California courts have declined to regard a residential mortgage loan as a 'debt' under the RFDCPA." Morgera v. Countrywide Home Loans, Inc., 2010 U.S. Dist. LEXIS 2037, *8 (E.D. Cal. Jan. 11, 2010); Pittman v. Barclays Capital Real Estate, Inc., 2009 U.S. Dist. LEXIS 34885, *11 (S.D. Cal. Apr. 24, 2009).  "[T]he law is clear that foreclosing on a property pursuant to a deed of trust is not a debt collection within the meaning of the RFDCPA." Gamboa v. Tr. Corps & Cent. Mortg. Loan Servicing Co., 2009 U.S. Dist. LEXIS 19613, *11 (N.D. Cal. Mar. 12, 2009); see also Izenberg v. ETS Servs., LLC, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008) ("foreclosure does not constitute debt collection under the RFDCPA").  As all of Plaintiffs' allegations appear to involve the collection of a mortgage debt, the RFDCPA claim fails.

**D. Negligence**

Plaintiffs make a number of disparate allegations.

70. Plaintiff is informed and believes, and thereon alleges that Defendants breached their duty to Plaintiff to perform acts as brokers of loans in such a manner as to not cause Plaintiff harm or use such Defendants' knowledge and skill to direct Plaintiff into a loan for which Plaintiff was not qualified for based upon his income as stated in documents provided by Defendants.

71. Plaintiff is informed and believes, and thereupon alleges that Defendants further breached their duty to Plaintiff by directing them into a loan transaction that they may not have otherwise qualified for by industry standards resulting in excessive fees paid for the loan transaction and payments in excess of Plaintiff's ability to pay.

72. Plaintiff is further informed and believes, and thereupon alleges that Defendants breached their duty to Plaintiff by their failure to perform acts in such a manner as to not cause Plaintiff harm.

73. Plaintiff is informed and believes, and thereupon alleges that Defendants failed to maintain the original mortgage note, failed to properly create original documents, and failed to make the required disclosures to the Plaintiff.

74. Further, Plaintiff is informed and believes, and thereupon alleges that Defendants took payments to which they were not entitled, charged fees they were not entitled to

charge and made or otherwise authorized reporting to various credit bureaus wrongfully. Doc. 1, Part 1, Complaint, at 13:19-14:9.  Defendants Aurora and MERS are the lender and beneficiary on the deed of trust.  Under California law, the elements of a cause of action for negligence are "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." Mendoza v. City of Los Angeles, 66 Cal. App. 4th 1333, 1339 (Cal. App. 2nd Dist. 1998).  "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." Vasquez v. Residential Investments, Inc., 118 Cal. App. 4th 269, 278 (Cal. App. 4th Dist. 2004).

Plaintiffs appear to allege that they were given a mortgage for which they were not suited.  "A lender owes no duty of care to the borrowers in approving their loan. Liability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender. As a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. DHI Mortgage recognizes the absence of a lender's duty to ensure a loan is suitable for a borrower. No such duty exists for a lender to determine the borrower's ability to repay the loan....The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's." Phillips v. MERS, 2009 U.S. Dist. LEXIS 93277, *10 (E.D. Cal. Oct. 2, 2009), citations omitted; see also Sierra-Bay Fed. Land Bank Assn. v. Superior Court, 227 Cal. App. 3d 318, 334 (Cal. App. 3d Dist. 1991) ("A commercial lender is not to be regarded as the guarantor of a borrower's success and is not liable for the hardships which may befall a borrower"). Plaintiffs' other allegations are unclear: "Defendant refused to loan Plaintiff legal tender or other depositors' money to fund the alleged bank loan check....There is no bona fide signature on the alleged promissory note....The Defendant recorded the forged promissory note as a loan from Plaintiff to the bank....The Defendant used this loan to fund the alleged bank loan check, back to Plaintiff....The Defendant at no time loaned Plaintiff legal tender or other depositors' money in the amount of [$261,400] or repay the unauthorized loan it recorded from Plaintiff to the bank." Doc. 1, Part 1, Complaint, at 7:21-8:12.  "Plaintiff has not provided the Court with any statute

1  creating a duty, or a special relationship giving rise to a duty between mortgagors and a lending

2  institution (Countrywide), a trustee (ReconTrust), or a beneficiary (MERS)." <u>Morgera v.</u>

3  <u>Countrywide Home Loans, Inc.</u>, 2010 U.S. Dist. LEXIS 2037, *12 (E.D. Cal. Jan. 11, 2010).

4

5  **E. Real Estate Settlement Procedures Act**

6          Plaintiffs allege "80. Defendants violated RESPA at the time of closing on the sale of the

7  Property by failing to correctly and accurately comply with disclosure requirements. 81.

8  Defendants violated RESPA, 12 U.S.C. §2605(e)(2) by failing and refusing to provide a written

9  explanation or response to Plaintiff's Qualified Written Request." Doc. 1, Part 1, Complaint, at

10 15:2-5.  RESPA's disclosures due at the time of closing are governed by 12 U.S.C. §§2603 and

11 2604.  However, those sections do not give rise to a private cause of action. See <u>Martinez v.</u>

12 <u>Wells Fargo Home Mortg., Inc.</u>, 598 F.3d 549, 557 (9th Cir. Cal. 2010) (discussing 12 U.S.C.

13 §2603); <u>Delino v. Platinum Cmty. Bank</u>, 628 F. Supp. 2d 1226, 1232 (S.D. Cal. 2009)

14 (discussing 12 U.S.C. §2604).  The requirements of a qualified written request are specific: "a

15 qualified written request shall be a written correspondence, other than notice on a payment

16 coupon or other payment medium supplied by the servicer, that- (i) includes, or otherwise

17 enables the servicer to identify, the name and account of the borrower; and (ii) includes a

18 statement of the reasons for the belief of the borrower, to the extent applicable, that the account

19 is in error or provides sufficient detail to the servicer regarding other information sought by the

20 borrower." 12 U.S.C. §2605(e)(1)(B).  Plaintiffs' claim fails because they have not plead that

21 they made such a request. See <u>Tina v. Countrywide Home Loans, Inc.</u>, 2008 U.S. Dist. LEXIS

22 88302, *16 (S.D. Cal. Oct. 30, 2008) ("they fail to specifically allege they sent, or Defendants

23 received, a specific, written correspondence meeting RESPA's QWR requirements").

24

25 **F. Breach of Fiduciary Duty**

26          Plaintiffs allege, "Defendants were agents for Plaintiff, by express and implied contract

27 and by operation of law....Defendants, by and through their agents, owed a fiduciary duty to

28 Plaintiff to act primarily for his benefit, to act with proper skill and diligence, and not to make a

1   personal profit from the agency at the expense of its principal." Doc. 1, Part 1, Complaint, at

2   15:15-22.  Plaintiffs have not alleged any facts supporting the assertion that Defendants were

3   agents for Plaintiffs; there is no allegation any of the Defendants was a mortgage broker.  "The

4   relationship between a lending institution and its borrower-client is not fiduciary in nature."

5   Nymark v. Heart Fed. Savings & Loan Assn., 231 Cal. App. 3d 1089, 1093 (Cal. App. 3d Dist.

6   1991).

7

8   **G. Fraud**

9       Plaintiffs allege, "93. As alleged herein, Defendants, and each of them, have made several

10  representations to Plaintiff with regard to material facts. 94. These representations made by

11  Defendants were false. 95. Defendants knew that these representations were false when made, or

12  these representations were made with reckless disregard for the truth. 96. Defendants intended

13  that Plaintiff rely on these material representations. 97. Plaintiff reasonably relied on said

14  material representations. 98. As a result of Plaintiff's reliance, he was harmed and suffered

15  damages." Doc. 1, Part 1, Complaint, at 16:16-23.  The "representations" referred to are unclear

16  but Plaintiffs did allege, "The Defendant misrepresented to the Plaintiff the elements of the

17  alleged agreement." Doc. 1, Part 1, Complaint, at 7:23.

18      Under California law, the "elements of fraud are: (1) a misrepresentation (false

19  representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent

20  to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." Robinson

21  Helicopter Co., Inc. v. Dana Corp., 34 Cal.4th 979, 990 (2004).  Federal Rule of Civil Procedure

22  9(b) requires that, when averments of fraud are made, the circumstances constituting the alleged

23  fraud must be "specific enough to give defendants notice of the particular misconduct...so that

24  they can defend against the charge and not just deny that they have done anything wrong."

25  Though the substantive elements of fraud are set by a state law, those elements must be pled in

26  accordance with the requirements of Rule 9(b). See Vess v. Ciba-Geigy Corp. USA, 317 F.3d

27  1097, 1103 (9th Cir. 2003).  Allegations of fraud should specifically include "an account of the

28  time, place, and specific content of the false representations as well as the identities of the parties

1    to the misrepresentations." <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764 (9th Cir. 2007).  "The

2    plaintiff must set forth what is false or misleading about a statement, and why it is false." <u>Vess v.</u>

3    <u>Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003).  Stated differently, the complaint

4    must identify "the who, what, when, where, and how" of the fraud.  <u>Kearns v. Ford Motor Co.</u>,

5    567 F.3d 1120, 1124 (9th Cir. 2009).

6        Plaintiffs allegations plainly fail to meet the requirements of Rule 9.  Plaintiffs have not

7    specified what the misleading material representations actually were, who made them, or when

8    they were made.

9

10   **H. Unfair Competition Law**

11       Plaintiffs allege "Defendants committed unlawful, unfair, and/or fraudulent business

12   practices...by engaging in the unlawful, unfair, and fraudulent business practices alleged herein."

13   Doc. 1, Part 1, Complaint, at 17:8-12.  Plaintiffs do not actually specify what these practices are

14   though the complaint refers generally to lenders securitizing and selling mortgages on a

15   secondary market, failing to follow the legal requirements for those transfers, encouraging

16   borrowers to refinance which artificially drove up housing prices. Doc. 1, Part 1, Complaint, at

17   5:22-6:18.  Regarding MERS Plaintiffs allege, "The Deed of Trust also identified MERS...as

18   nominee for lender, and lenders successors and assigns, and the beneficiary. Plaintiff is informed

19   and believes, and thereon allege, MERS has no standing in this arena as they are not licensed or

20   chartered to be and/or act as a nominee or beneficiary. MERS was developed to be a document

21   storage company, not a nominee or beneficiary. Therefore, the above stated Deed of Trust must

22   fail as there is no standing for MERS to assert a beneficial interest. Further, Plaintiff is informed

23   and believes, and thereon allege that MERS is not licensed to do business in the State of

24   California or registered with the State of California." Doc. 1, Part 1, Complaint, at 6:23-7:5.

25   They also allege "There is no bona fide signature on the alleged promissory note. The copy of the

26   promissory note is a forgery. The alleged original promissory note has not been produced by

27   Defendant with Plaintiff's name on it....The Defendant recorded the forged promissory note as a

28   loan from Plaintiff to the bank. The Defendant used this loan to fund the alleged bank loan

1  check, back to Plaintiff....The Defendant at no time loaned Plaintiff legal tender or other

2  depositors' money in the amount of [$261,400] or repay the unauthorized loan it recorded from

3  Plaintiff to the bank." Doc. 1, Part 1, Complaint, at 7:24-8:12.  These allegations are diffuse,

4  confusing, and potentially contradictory regarding whether a mortgage was actually transacted.

5       "[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business

6  act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by

7  Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and

8  Professions Code." Cal. Bus. & Prof. Code §17200.  "The UCL defines unfair competition as

9  'any unlawful, unfair or fraudulent business act or practice.' Therefore, under the statute there are

10  three varieties of unfair competition: practices which are unlawful, unfair or fraudulent." In re

11  Tobacco II Cases, 46 Cal. 4th 298, 311 (Cal. 2009), citations and quotations omitted.  In the

12  complaint, Plaintiffs cite to all three varieties of unfair competition.

13       Defendants argue that any UCL cause of action is preempted by the federal Home

14  Owner's Loan Act.  The Ninth Circuit has found that "HOLA, through OTS, preempted the

15  entire field of lending regulation. UCL § 17500 and § 17200, as applied, are specifically listed

16  under § 560.2(b) as types of state laws OTS intended to preempt." Silvas v. E*Trade Mortg.

17  Corp., 514 F.3d 1001, 1008 (9th Cir. Cal. 2008).  "To enhance safety and soundness and to

18  enable federal savings associations to conduct their operations in accordance with best practices

19  (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and

20  burden), OTS hereby occupies the entire field of lending regulation for federal savings

21  associations." 12 C.F.R. 560.2(a).  Defendants have not directly alleged or shown that they are

22  federal savings associations.  However, HOLA preemption of California UCL claims against

23  Defendants Aurora Loan Services and Countrywide Home Loans has been recognized by the

24  federal courts. See Murillo v. Aurora Loan Servs., LLC, 2009 U.S. Dist. LEXIS 61791, *8-10

25  (N.D. Cal. July 17, 2009); Odinma v. Aurora Loan Servs., 2010 U.S. Dist. LEXIS 28347, *20

26  (N.D. Cal. Mar. 23, 2010); Grant v. Aurora Loan Servs., 2010 U.S. Dist. LEXIS 98034, *45-47

27  (C.D. Cal. Sept. 10, 2010); Newson v. Countrywide Home Loans, Inc., 2010 U.S. Dist. LEXIS

28  49617, *11-14 and *20-25 (N.D. Cal. May 17, 2010).  There is no indication the Defendant

MERS would be covered by any HOLA preemption. Though Plaintiffs' UCL claim is not altogether clear, the general allegations bear some similarity to those in <u>Murillo</u> which the Northern District of California found to be preempted by HOLA. See <u>Murillo v. Aurora Loan Servs., LLC</u>, 2009 U.S. Dist. LEXIS 61791, *10 (N.D. Cal. July 17, 2009) (allegations that defendants used unfair business practices to artificially raise the value of homes to allow for larger loans).

For UCL actions under the unlawful prong, "an action based on Business and Professions Code §17200 to redress an unlawful business practice 'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder." <u>Farmers Ins. Exch. v. Superior Court</u>, 2 Cal. 4th 377, 383 (Cal. 1992).  In other words, a "defendant cannot be liable under §17200 for committing 'unlawful business practices' without having violated another law." <u>Ingles v. Westwood One Broadcasting Servs., Inc.</u>, 129 Cal. App. 4th 1050, 1060 (Cal. App. 2nd Dist. 2005).  All of Plaintiffs' other claims are being dismissed.  "A court may not allow plaintiff to plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition." <u>Chabner v. United of Omaha Life Ins. Co.</u>, 225 F.3d 1042, 1048 (9th Cir. 2000).

An unfair practice is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." <u>McDonald v. Coldwell Banker</u>, 543 F.3d 498, 506 (9th Cir. 2008), citations omitted.  "The test of whether a business practice is unfair involves an examination of that practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." <u>South Bay Chevrolet v. GM Acceptance Corp.</u>, 85 Cal. Rptr. 2d 301, 316 (Cal. App. 4th Dist. 1999).[2]  As previously stated, Plaintiffs allegations are unclear.  What the unfair

---

[2]Another Ninth Circuit panel noted that "California's unfair competition law, as it applies to consumer suits, is currently in flux. In 1999, the California Supreme Court rejected the balancing test in <u>South Bay</u> in suits involving unfairness to the defendant's competitors. See

practices complained of can not be easily gathered from the complaint.  At base, Plaintiffs appear to allege MERS can not be the beneficiary on the deed of trust and can not legally transfer the interest in the property.  Case law suggests MERS can be a beneficiary and transfer the interest. See <u>Castaneda v. Saxon Mortg. Servs.</u>, 2009 U.S. Dist. LEXIS 119241, *5 n.3 (E.D. Cal. Dec. 3, 2009) (MERS is a registered Delaware corporation that does not need a license to conduct business in California); <u>Benham v. Aurora Loan Servs.</u>, 2009 U.S. Dist. LEXIS 78384, *8-9 (N.D. Cal. Sept. 1, 2009) (as beneficiary, MERS has ability to transfer beneficial interest in property).  There may be other possibilities, but the allegations are too fragmentary.

Fraudulent conduct under the UCL "does not refer to the common law tort of fraud." <u>Puentes v. Wells Fargo Home Mortg., Inc.</u>, 160 Cal. App. 4th 638, 645 (Cal. App. 4th Dist. 2008).  A business practice is fraudulent under the UCL if "members of the public are likely to be deceived." <u>Kaldenbach v. Mutual of Omaha Life Ins. Co.</u>, 178 Cal. App. 4th 830, 848 (Cal. App. 4th Dist. 2009). Whether a business practice is fraudulent is "based on the likely effect such practice would have on a reasonable consumer." <u>McKell v. Washington Mutual, Inc.</u>, 142 Cal.App.4th 1457, 1471 (Cal. App. 2nd Dist. 2006).  Though the cause of action is different than common law fraud, the heightened pleading standards of Fed. Rule Cov. Proc. 9 still apply. <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125 (9th Cir. 2009) ("Rule 9(b)'s heightened pleading standards apply to claims for violations of...UCL").  As previously discussed, Plaintiffs have not met the Rule 9 standard.

**I. Covenant of Good Faith and Fair Dealing**

Plaintiffs allege "Defendants breached the implied duty of good faith and fair dealing owed to Plaintiff by, among other things, performing the acts and failure to act herein allege, and

---

[<u>Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tele. Co.</u>, 20 Cal. 4th 163 (Cal. 1999)]. The court held that this balancing test was 'too amorphous' and 'provide[d] too little guidance to courts and businesses.' The court then held that unfairness must 'be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition.' This holding, however, was limited to actions based on unfairness to competitors." <u>Lozano v. AT&T Wireless Servs.</u>, 504 F.3d 718, 735 (9th Cir. 2007), citations omitted.

by failing to perform the duties specifically enumerated herein. Defendants further breached the duty of good faith and fair dealing, by: a. Failing to put as much consideration to Plaintiff's interests as to Defendants interest; b. Initiating foreclosure proceedings on the property despite not having the right to do so and failure to comply with California law; c. Failing to give proper notice before commencing foreclosure; d. Sending deceptive letters to Plaintiff advising Plaintiff of their ability to short sale their property when Defendant had no intention to act." Doc. 1, Part 1, Complaint, at 18:8-17.

"Generally, no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.' Thus, the implied covenant tort is not available to parties in an ordinary commercial transaction where the parties deal at arms' length." Pension Trust Fund v. Federal Ins. Co., 307 F.3d 944, 955 (9th Cir. 2002), citations omitted. California courts do not invoke a special relationship between a lender and borrower. Oaks Management Corp. v. Superior Court, 145 Cal. App. 4th 453, 466 (Cal. App. 4th Dist. 2006); Kim v. Sumitomo Bank, 17 Cal. App. 4th 974, 979 (Cal. App. 2nd Dist. 1993). A loan transaction is at arms-length and there is no fiduciary relationship between the borrower and lender absent special circumstances with "fiduciary characteristics." Union Bank v. Superior Court, 31 Cal. App. 4th 573, 579 n. 2 (Cal. App. 2nd Dist. 1995). Plaintiffs do not allege facts establishing a "special relationship" between Plaintiffs and Defendants that could justify extending tort liability.

**J. Incomplete Service**

This suit was filed in state court on March 23, 2010, and was removed on April 27, 2010. More than 120 days have elapsed from both the date of removal and the date of filing in state court. There is no indication that Defendant Santa Cruz has been served with process. Plaintiffs will be required to show cause why Defendant Santa Cruz should not be dismissed pursuant to Fed. Rule Civ. Proc. 4(m).

**IV. Order**

Plaintiffs' complaint is DISMISSED with leave to amend.  Plaintiffs must file an amended complaint within twenty-eight (28) days of the service of this order.  Plaintiffs must also show cause in writing within twenty-eight (28) days of the service of this order why Defendant Santa Cruz should not be dismissed for violation of Federal Rule of Civil Procedure 4(m).


IT IS SO ORDERED.

Dated:     November 23, 2010     　　　　　　_____
　　　　　　　　　　　　　　　　　　CHIEF UNITED STATES DISTRICT JUDGE

16